UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MADAKET LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>SWEET GRACE DISTILLING COMPANY LLC,<br><br>    Defendant. | Civil Action No. 23-2928 (JEB) |

## MEMORANDUM OPINION

      For sixteen years, Plaintiff Madaket LLC has owned and operated Mexican restaurants here in Washington (and more recently on Nantucket) called Surfside. As of 2016, it has done so as the proud owner of a trademark registration for the SURFSIDE mark. Plaintiff brought this suit against Defendant Sweet Grace Distilling Company LLC alleging trademark infringement when the latter began using the name Surfside to sell its canned cocktails. In so doing, Madaket put a target on its back. In addition to answering the Complaint, Sweet Grace responded with a Counterclaim alleging that Plaintiff made materially false statements to the U.S. Patent and Trademark Office in the course of procuring and maintaining its trademark registration. Believing these claims are deficiently pled, Madaket moves to dismiss them. Defendant puts up no fight as to the fraudulent-maintenance count but stands its ground with respect to fraudulent procurement. Because the Court agrees with Madaket that this latter cause of action is without merit as well, it will grant the Motion in full.

I.      **Background**

    A.  Factual Background

The story of the parties' underlying trademark dispute is surveyed in the Court's prior Opinion resolving a controversy concerning a purported settlement. See ECF No. 44 (Settlement Opinion) at 2–6. The Court thus skips over that topic and focuses on the facts relevant to the Counterclaim. In so doing, it takes the facts alleged in the amended version of the Counterclaim as true (a choice explained later). It also takes judicial notice of information and documents available on the USPTO's official database. See Paleteria La Michoacana, Inc. v. Productos Tocumbo S.A. De C.V., 188 F. Supp. 3d 22, 43 n.13 (D.D.C. 2016) (taking notice of same and collecting cases).

Madaket applied to register a SURFSIDE trademark for use in restaurant and bar services in November 2013 in connection with its operation of several restaurants going by that name in the Washington area. See ECF No. 40 at 12–19 (Am. Counterclaim), ¶¶ 7–8. As part of that application, Madaket's owner Robert Blair attested to the following on behalf of the company: "[T]o the best of [his] knowledge and belief no other person, firm, corporation, or association has the right to use the mark [i.e., SURFSIDE] in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." Id., ¶ 9.

The USPTO was not immediately convinced of the application's merit. On February 27, 2014, it issued an Office Action preliminarily refusing it because the SURFSIDE mark was "confusingly similar" to SURFSIDE 5, a mark already registered for bar and cocktail lounge services by another company. See USPTO Office Action of Feb. 27, 2014,

https://tsdr.uspto.gov/documentviewer?caseId=sn86116856&docId=OOA20140227173010&link Id=18#docIndex=17&page=1. The agency also noted a pending application for a SURFSIDE 6 mark, which might necessitate suspending Madaket's later-filed application. Id. But the USPTO's refusal was not final, and Plaintiff was given an opportunity to respond. Id. In its July 2014 rebuttal, Madaket "confirmed that it knew of numerous other entities using SURFSIDE." Am. Counterclaim, ¶ 13. In fact, it included a list of 33 USPTO registrations and approved applications for marks used in the restaurant industry involving the word "surf," five of which featured some version of the word "surfside" or "surftide." ECF No. 37-2 (Office Action Response) at 9–10. This tactic was meant to show that, given the ubiquity of similar marks in the food-service industry, the SURFSIDE 5 mark was "relatively weak and entitled to only a narrow scope of protection." Id. at 11. Madaket thus argued to the USPTO that its mark "should be permitted to register and coexist with the other highly similar SURF marks setting forth restaurants and related goods/services." Id.

Sweet Grace alleges that Plaintiff's Office Action Response belied its earlier declaration — filed just seven months prior — that it knew of "no other person, firm, corporation, or association [that] has the right to use the [SURFSIDE] mark." Am. Counterclaim, ¶¶ 9, 12–16 (emphasis added); see also id., ¶ 17 (alleging that "[a]t a minimum . . . Madaket had constructive knowledge of several trademark applications and registrations for SURFSIDE marks covering restaurant and bar services" and thus "acted with reckless disregard for the truth"). As Sweet Grace tells it, moreover, Madaket's fib on the application was key to its ultimate success: "Relying on the statements in Madaket's November 12, 2013, declaration as true, the USPTO allowed the . . . Application to register for bar and restaurant services on February 9, 2016." Id., ¶ 19. The Amended Counterclaim thus alleges that Plaintiff violated the Lanham Act by

3

committing fraud on the USPTO and accordingly seeks cancellation of Madaket's SURFSIDE trademark registration. Id., ¶¶ 20–27 (citing 15 U.S.C. §§ 1119, 1120). Defendant's object, of course, is to continue using its own SURFSIDE mark unimpeded.

    B.  Procedural Background

Sweet Grace, however, was not the first one to enter the courthouse doors. It all began in 2021, when Defendant applied for its own SURFSIDE mark for use in selling distilled spirits, which it then deployed in the branding of its new line of canned cocktails. See ECF No. 23-20 (Declaration of Clement Pappas), ¶¶ 5–6; 23-5 (Font-Change Agreement Emails) at 11. Upon learning of this, Plaintiff sent a cease-and-desist letter, see ECF No. 23-17 (Cease & Desist), but Sweet Grace responded that it believed that the marks could coexist without creating any consumer confusion. See ECF No. 23-18 (Resp. to Cease & Desist). Disagreeing with that assessment, Madaket filed suit in October 2023. See ECF No. 1 (Compl.). The parties then spent several months attempting to reach settlement before those negotiations ultimately fizzled. See Settlement Op. at 2–6.

With settlement off the table, the parties turned back to litigating this case. On March 25, 2024, Sweet Grace answered the Complaint and filed the initial version of its Counterclaim. See ECF No. 14 (Answer & Counterclaim). That original Counterclaim alleged fraudulent procurement of a trademark as previously described, id. at 15; it also asserted that Plaintiff had fraudulently maintained its registration by lying about its corporate status in a 2021 USPTO filing. Id. at 14, 16.

Madaket subsequently sought leave to amend its Complaint, which Defendant did not oppose and the Court granted. See ECF Nos. 29 (Mot. for Leave to Amend); 34 (Def. Resp. to Mot. for Leave to Amend); Minute Order of May 6, 2024. Shortly thereafter, it also moved to

4

dismiss Sweet Grace's original Counterclaim. See ECF No. 30 (MTD). Two weeks after the Amended Complaint found its way onto the docket and nearly two months after Plaintiff had moved to dismiss the original Counterclaim, Sweet Grace threw a wrench into the proceedings by filing an Amended Counterclaim without seeking leave and without Madaket's consent. See Am. Counterclaim. That Amended Counterclaim added certain facts in support of the fraudulent-procurement count and dropped the fraudulent-maintenance allegation. Id., ¶¶ 10, 14–15 (adding facts); see also id., ¶¶ 20–27 (bringing only one count for fraudulent procurement). In addition to its Motion to Dismiss the original Counterclaim, Plaintiff has now filed a Motion to Strike the Amended Counterclaim as improperly filed. See ECF No. 46 (Mot. to Strike).

## II.  Legal Standard

Plaintiff seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). That Rule requires that a court dismiss a claim when the complaint "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the court must "treat the [counterclaim's] factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); see also Iqbal, 556 U.S. at 678. A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the counterclaim. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a [counterclaim] must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its

face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  A counterclaim may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

Before the Court can zero in on the merits issues before it, some procedural housekeeping is in order.  First, because Sweet Grace does not contest dismissal of its fraudulent-maintenance count (and has in fact taken it out of the Amended Counterclaim), the Court has no trouble granting the Motion on that score.  See ECF No. 37 (Def. Opp.) at 18–19.

The second preliminary issue is more involved.  The parties engage in a protracted debate about whether Madaket's Amended Complaint mooted its Motion to Dismiss the Counterclaim. See id. at 6; ECF No. 39 (Pl. Reply) at 2–6.  Relatedly, Plaintiff's Motion to Strike argues that the Amended Complaint did not give Sweet Grace a free pass to file its Amended Counterclaim without first obtaining the Court's permission.  See Mot. to Strike at 4–8.  The Court need not engage in these sidebars, however, because even if the Amended Counterclaim were properly filed, it would still fail to state a claim for reasons given in the Motion to Dismiss.  That being the case, the Motion to Strike will be denied as moot.  As for Defendant's contention that the Motion to Dismiss is moot as well, the Court will not require Madaket to go through the motions of refiling an identical Motion to Dismiss before ordering dismissal; formalism has its place, but that would be a bridge too far.  Particularly so when Plaintiff has, in fact, timely reupped the relevant arguments from its Motion to Dismiss in its Motion to Strike.  See Mot. to Strike at 8–10.  In the analysis that follows, to give Sweet Grace the benefit of the doubt, the Court treats the Motion to Dismiss as concerning the Amended Counterclaim.

With that procedural quagmire circumnavigated, the merits take center stage. To state a claim for fraud in the procurement of a federal trademark, a claimant must plead:

> (1) that the registrant . . . made a false representation to the USPTO regarding a material fact; (2) that [it] knew or should have known the representation was false; (3) that [it] intended to induce the USPTO to act or refrain from acting based upon such representation; (4) that the USPTO reasonably relied on the misrepresentation; and (5) that some damage was proximately caused by the USPTO's reliance on the false material fact.

Lorenzana v. S. Am. Restaurants Corp., 799 F.3d 31, 34 (1st Cir. 2015) (citing treatise and collecting cases adopting this test). According to Madaket, the Amended Counterclaim has insufficiently pled both the knowledge element and the reliance element. See MTD at 7–10.

As an initial matter, the parties do not agree on the requirements of the former. Id. at 6 (asserting that actual knowledge is needed); Def. Opp. at 13 ("[A] party's 'reckless disregard' for the truth or falsity of its statement also 'satisfies the requisite intent for fraud on the USPTO in trademark matters.'") (quoting Chutter, Inc. v. Great Mgmt. Grp., LLC, 2021 WL 4494251, at *6 (TTAB Sept. 30, 2021), rev'd on other grounds, Great Concepts, LLC v. Chutter, Inc., 90 F.4th 1333 (Fed. Cir. 2024)). This appears to be an area where authorities do not point in a consistent direction. See 4 McCarthy on Trademarks and Unfair Competition § 31:66 (5th ed.) (noting conflict between judicial precedent and decision of Trademark Trial and Appeal Board). The Court will leave resolution of the issue to minds better versed in the field because it is the reliance criterion on which the Amended Counterclaim clearly falters, and there is no dispute about the applicability or contours of that element. See Def. Opp. at 10, 17–18.

Two facts apparent from the Amended Counterclaim and the judicially noticeable materials combine to make it implausible that the USPTO reasonably relied on Madaket's allegedly false attestation. To start, as Plaintiff notes, it was only "after Madaket willingly disclosed the information that purportedly contradicted its prior statement in the . . . Application"

7

that the agency issued the registration. See MTD at 10; see also Am. Counterclaim, ¶ 13 ("[S]hortly after it submitted its November 12, 2013, declaration, Madaket confirmed that it knew of numerous other entities using SURFSIDE.") (emphasis added). That poses a serious problem for Defendant's theory of reliance. Plaintiff rightfully concludes that given the timing, "the USPTO issued the . . . Registration with full knowledge of all material facts and circumstances." MTD at 10. It would not have been reasonable for the USPTO to ignore the full record and rely on a prior inconsistent statement as a basis for issuing the registration.

The facts only get worse for Sweet Grace from there. Not only did the USPTO have Madaket's curative submission in hand before it approved the application, but it also refused the initial application before the Office Action Response was filed. See USPTO Office Action of Feb. 27, 2014. In that refusal, it expressly disavowed Plaintiff's earlier representation that no other entity "ha[d] the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely . . . to cause confusion." Am. Counterclaim, ¶ 9; see USPTO Office Action of Feb. 27, 2014. In fact, it determined that SURFSIDE was "confusingly similar" to an already registered mark, SURFSIDE 5. See USPTO Office Action of Feb. 27, 2014. In other words, absent Plaintiff's later submission clarifying its knowledge of other rightsholders and arguing that their claims were weak, the USPTO would not have issued the registration. Id. (requiring applicant response to preliminary refusal within six months "to avoid abandonment of [Madaket's] trademark application"). Confronting a similar situation in which the USPTO first rejected a trademark application accompanied by a misrepresentative declaration and then accepted it after receiving an amendment, the Ninth Circuit found no reliance on the earlier statement. See OTR Wheel Eng'g., Inc. v. W. Worldwide Servs., Inc., 897

F.3d 1008, 1021 (9th Cir. 2018). Just as there, Madaket's filing of an accurate statement after the initial USPTO denial precludes the inference that reliance occurred here.

Sweet Grace's arguments in rebuttal do not move the needle. It first supposes that its allegations — *e.g.*, that the USPTO "rel[ied] on the statements in Madaket's November 12, 2023, declaration as true" in issuing the registration — are "well-founded" and sufficient to clear the pleading bar. See Def. Opp. at 17. In support, it cites a Trademark Trial and Appeal Board case for the proposition that "'the USPTO <u>relies on declarations</u> to be complete, accurate, and truthful' when deciding whether to issue a registration." Id. (quoting Chutter, 2021 WL 4494251, at *12) (emphasis added). For the Court to agree, it must ignore the USPTO's refusal of the original application and Madaket's intervening submission to the agency. While it might be true that declarations are generally afforded presumptive accuracy in USPTO proceedings, that clearly did not occur here. To recognize as much is not to impermissibly jump to the merits on a motion to dismiss, as Sweet Grace insists, see Def. Opp. at 17; rather the Court is simply assessing the plausibility of the claim, while considering the limited record as it stands.

As a final effort, Sweet Grace contends that because a trademark applicant is <u>required</u> to make the averment it asserts was fraudulent, the registration never would have issued had Madaket not made the statement. See Def. Opp. at 18. That argument sounds in causation rather than reliance. That "the USPTO would not have even considered Madaket's application" had it not declared its ignorance of other rightsholders does not establish that the agency reasonably relied on that statement — rather than, say, Plaintiff's later arguments that the mark was weakened by its pervasive use — in issuing the registration. Id. Again, the USPTO's initial refusal decisively undercuts the possibility that it relied on Madaket's attestation. This attempt thus falls short as well.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss and deny the Motion to Strike as moot. A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: June 21, 2024