UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MADAKET LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>SWEET GRACE DISTILLING COMPANY, LLC, *et al.*,<br><br>**Defendants.** | Civil Action No. 23-2928 (JEB) |

## MEMORANDUM OPINION

For sixteen years, Plaintiff Madaket LLC has owned and operated Mexican restaurants named Surfside here in the District. As of 2016, it has done so as the proud owner of a trademark registration for the SURFSIDE mark. In October 2023, Plaintiff brought this trademark-infringement suit against Sweet Grace Distilling Company LLC for its use of the Surfside name to sell its canned cocktails. See ECF No. 1 (Compl.). After months of litigation, Madaket filed an Amended Complaint that added four other Defendants, including Reyes Holdings LLC. See ECF No. 41 (Am. Compl.). Reyes, a Delaware company with headquarters in Illinois, id., ¶ 3, now moves to dismiss the three counts against it for lack of personal jurisdiction and failure to state a claim. See ECF No. 64 (Def. Mot.). As a holding company without a license to sell alcohol, Reyes does not distribute Surfside canned cocktails anywhere, let alone here in the District. Although its affiliated companies may distribute Surfside products in the District, this is not enough to permit the Court to exercise personal jurisdiction over Reyes. The Court, accordingly, will grant Defendant's Motion.

1

I.      **Background**

The story of Plaintiff's underlying trademark dispute is surveyed in the Court's prior Opinion resolving a controversy concerning a purported settlement. See ECF No. 44 (Settlement Op.) at 2–6. The Court thus focuses here on the facts relevant to Defendant's Motion, which are largely undisputed. In doing so, it consults materials beyond the Complaint itself. "A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of [personal jurisdiction]." Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, . . . the court may inquire, by affidavits or otherwise, into the facts as they exist.")).

Reyes has three business units, one of which is Reyes Beverage Group, a conglomerate of alcohol distributors. See Def. Mot. at 3. While Reyes itself is not licensed to distribute or sell alcohol products, id. at 1, some of its business units are and do. Id. at 3. Premium Distributors, for example, is one of the "separate legal entities" of which the Reyes Beverage Group conglomerate is comprised, and it does distribute alcohol in the District. Id. at 3 n.1; see also id. at 4 (explaining how Premium's personnel, operations, and financials are separate from Reyes). In fact, Premium sells the contested Surfside canned cocktails manufactured by Sweet Grace. Id. at 4 ("One of Reyes' affiliates — Premium Distributors . . . , another of the Defendants Madaket added when it amended its complaint — does . . . do business in the District and with Sweet Grace.") (cleaned up).

What renders our jurisdictional analysis more complex is the existence of SipMarket, the online platform that Premium uses to sell Surfside canned cocktails. See ECF No. 69 (Pl. Opp.) at 4–5. Both parties agree that SipMarket is owned by Reyes. Id. at 9; see ECF No. 71 (Def. Reply) at 4. Madaket accurately describes SipMarket as a "centralized online purchasing system

through which customers can place wholesale orders for products delivered by Reyes's local affiliates." Pl. Opp. at 4; cf. Def. Reply at 1 ("The SipMarket platform . . . connects customers to Reyes's affiliated distributors (e.g., Premium) so that customers may purchase beverages directly from those distributors, not from Reyes.").

Madaket's Amended Complaint alleges three counts against Reyes: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); and (3) common-law trademark infringement and unfair competition. See Am. Compl., ¶¶ 34–60. In relation to personal jurisdiction, it alleges that Reyes is a limited liability company incorporated in Delaware with headquarters in Illinois, id., ¶ 3; Reyes is a food and beverage bottler and distributor, id., ¶ 20; and "[u]pon information and belief, Reyes and its subsidiary, Premium Distributors, distribute Sweet Grace products displaying the SURFSIDE mark to retailers in the District of Columbia." Id., ¶ 8.

Reyes now moves to dismiss, contending that the Court has no personal jurisdiction over it and that the Amended Complaint does not make out an actionable claim. The Court will examine only the former issue.

**II.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over it. The plaintiff bears the burden of establishing personal jurisdiction. See FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008); Livnat v. Palestinian Auth., 851 F.2d 45 (D.C. Cir. 2017). The Court resolves factual discrepancies in favor of the plaintiff. See Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). Conclusory statements, however, are not enough to satisfy the plaintiff's burden. See IMAPizza, LLC v. At Pizza Ltd., 334 F. Supp. 3d 95, 107–08 (D.D.C. 2018).

When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." Sharp Corp. v. Hisense USA Corp., 292 F. Supp. 3d 157, 165–66 (D.D.C. 2017) (quoting 5B Charles A. Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 1351 (3d ed. 2004)). The Court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing. Id.

### III.  Analysis

In resolving Defendant's Motion, the Court looks separately at whether personal jurisdiction exists and, if not, whether jurisdictional discovery is warranted. Before doing so, it resolves a procedural objection raised by Reyes. Defendant argues that facts related to jurisdiction appearing in Plaintiff's Opposition "should be disregarded" because "they are absent from Madaket's Amended Complaint." Def. Reply at 3. The Court disagrees. As set forth above, courts may look outside the four corners of the Complaint to resolve jurisdictional disputes. Indeed, a plaintiff has no reason to set forth detailed jurisdictional facts unless and until challenged by the defendant. The Court will thus consider Madaket's supplemental facts.

####    A.  Personal Jurisdiction

Personal jurisdiction refers to "the power of the Court to impose judgment on a particular defendant in the event liability is established." Kopff v. Battaglia, 425 F. Supp. 2d 76, 80 (D.D.C. 2006). It is "a threshold matter for the Court to resolve." Id. A plaintiff bears the burden of establishing that the court has personal jurisdiction over a given defendant, and she "must allege 'specific facts upon which personal jurisdiction may be based.'" Id. (quoting Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998)). In other words, a plaintiff "must allege specific acts connecting [the] defendant with the forum." Okolie v. Future Servs. Gen. Trading & Contr. Co., 102 F. Supp. 3d 172, 175 (D.D.C. 2015) (alteration in original) (quoting

4

Second Amend. Found. v. U.S. Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001)).  Personal jurisdiction can be either general or specific.  Kopff, 425 F. Supp. 2d at 81.

For a corporation, general jurisdiction may be asserted if the forum is one in which the corporation is "fairly regarded as at home," which has been defined as generally being either its "place of incorporation" or its "principal place of business."  Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)).  It does not exist in the present case because Defendant is incorporated in Delaware with its principal place of business in Illinois.  See Am. Compl., ¶ 3; Def. Mot. at 3.

A court may nonetheless exercise specific jurisdiction over a non-resident defendant to adjudicate claims that arise from the defendant's contacts with the forum state.  See Goodyear Dunlop, 564 U.S. at 919 (noting that specific jurisdiction covers only those "issues deriving from, or connected with, the very controversy that establishes jurisdiction") (quoting Arthur von Mehren & Donald Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)).  In most instances, the court "first examine[s] whether jurisdiction is applicable under the state's long-arm statute and then determine[s] whether a finding of jurisdiction satisfies the constitutional requirements of due process."  GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).

Our city's long-arm statute enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into D.C. court, three of which are at issue here: "transacting any business in the District of Columbia," "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia," and "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia."  D.C. Code § 13-423(a)(1), (3) & (4); see also Am. Compl., ¶ 8.  In considering the reach of the long-arm statute,

5

the Court assumes for purpose of the Motion that trademark infringement is a tortious injury. See Safex Found., Inc. v. SafeLaunch Ventures Ltd., 694 F. Supp. 3d 1, 8 (D.D.C. 2023) (determining personal jurisdiction in trademark-infringement dispute brought under D.C.'s long-arm statute). For cases analyzed under the "transacting business" prong, moreover, the Court's consideration is one of due process alone. See Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987) (stating that the "transacting business" clause is "coextensive . . . with the Constitution's due process limit").

To comply with due process, a defendant must have somehow "purposefully avail[ed]" itself of "the benefits and protections of [the forum's] laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This requirement may be satisfied by the defendant's "participation in the 'stream of commerce,'" which includes moving goods "through distributors to consumers" in the forum. Williams v. Romarm, SA, 756 F.3d 777, 784 (D.C. Cir. 2014) (quoting J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881 (2011)). The Due Process Clause requires that the defendant "target[] the District or its customers in some way." Id. at 785. The defendant may do so through "efforts directed toward the forum state, such as 'special state-related design, advertising, advice, [or] marketing.'" Id. (quoting Nicastro, 564 U.S. at 889 (Breyer, J., concurring)).

The Court is not permitted to exercise personal jurisdiction over Reyes here because Defendant has transacted no business in — and thus did not have sufficient contacts with — the District. As a non-resident holding company without a license to sell alcohol, Reyes does not distribute Surfside canned cocktails anywhere, let alone here in the District. In addition, Plaintiff has not provided facts in either its Amended Complaint or its Opposition to show how the alleged tortious injury is directly connected to Defendant's conduct in or out of the District.

Even assuming that Plaintiff has alleged sufficient facts to satisfy those prongs of the long-arm statute, however, its allegations do not show minimum contacts with the District and accordingly fall short of the due-process requirement.

In its Amended Complaint, in fact, Madaket adequately identifies minimum contacts with the forum by all Defendants except Reyes and its affiliate, Premium. See Am. Compl., ¶ 8 ("[W]ebsites of both Safeway and Uncorked show that those defendants advertise and sell Sweet Grace products," as does "publicly available information on [the other defendant's website]."). For Reyes and Premium, Plaintiff makes only conclusory statements supported by inference. Id. ("Upon information and belief, Reyes and its subsidiary, Premium Distributors, distribute Sweet Grace products displaying the SURFSIDE mark to retailers in the District of Columbia."); id., ¶¶ 20–21 (same). The Court, however, is not bound to accept inferences "if such inferences are unsupported by the facts set out in the complaint." Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)); see also Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec., 2019 WL 2076762, at *1 (D.D.C. May 10, 2019).

In its Opposition, Madaket seeks to establish personal jurisdiction via a different avenue. It contends that Defendant's website, SipMarket, "functions as a virtual storefront in the District," Pl. Opp. at 9, and that Defendant's "internet activity satisfies the Calder 'effects test' [for personal jurisdiction] because it is specifically aimed at the District and directly involves trademark infringement from which the harm is felt . . . in the District." Id. at 11. This argument misses the mark because online customers "do not transact with Reyes through the SipMarket platform." Def. Reply at 4. SipMarket, instead, connects wholesale customers with Reyes's affiliates; when customers place orders on SipMarket, "the affiliates fulfill the orders,

7

payments are made directly to the affiliates' bank accounts, and the invoices delivered to the customers are issued by the affiliates — not by Reyes." Id. at 4–5; see also id. at 12 ("[I]t is not Reyes transacting business in D.C.[;] it is Premium.").

The Court agrees that Madaket has shown only "that D.C. customers are transacting with Reyes's affiliate Premium (among other affiliated distributors) through SipMarket." Def. Reply at 7. It also agrees that "Premium's contacts with D.C. are not attributable to Reyes for purposes of jurisdiction." Id. (citing Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 7 (D.D.C. 2003) ("Ordinarily, a defendant corporation's contacts with a forum may not be attributed to . . . affiliated corporations.") (emphasis added), and Toumazou v. Turkish Republic of N. Cyprus, 71 F. Supp. 3d 7, 19 (D.D.C. 2014) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (quoting United States v. Bestfoods, 524 U.S. 51, 61 (1998)). While Plaintiff has established that D.C. consumers may use SipMarket to purchase Surfside canned cocktails, it has not shown that these transactions are made directly with Defendant. Madaket has thus not satisfied its burden to show that Reyes has sufficient minimum contacts with the District for the Court to exercise personal jurisdiction over it.

B. Jurisdictional Discovery

When personal jurisdiction has not been adequately established, a plaintiff can request jurisdictional discovery to supplement its factual allegations. Madaket's request for such discovery here, however, has not met the Court's standard for granting it:

> [T]o merit jurisdictional discovery, Plaintiffs must (1) show that the existing record is inadequate to support personal jurisdiction and that existing jurisdictional allegations can be bolstered through discovery; (2) give some specific indication on what they seek or what will be uncovered in discovery; and (3) have a good-faith belief

8

> that discovery will develop facts and information relevant to personal jurisdiction.

Holland v. Cardem Ins. Co., Ltd., 2020 WL 9439381, at *11 (D.D.C. June 22, 2020) (internal quotation marks omitted). Here, Plaintiff has not provided any "specific indication" of what it seeks or how discovery will bolster its jurisdictional allegations. Compare Pl. Opp. at 10 n.1 ("Madaket respectfully requests jurisdictional discovery to establish actual use by District residents of Reyes's SipMarket ordering portal to purchase Sweet Grace's infringing Surfside products."), with Staggs v. Smith & Wesson, 2022 WL 444110, at *8 (D.D.C. Feb. 14, 2022) (granting jurisdictional discovery because "[p]laintiff's reference to 'business plans,' 'budgets,' 'advertising,' 'marketing,' and 'sales' all indicate types of evidence plausibly related to Defendant's efforts to 'target[] the District or its customers in some way'") (quoting Williams, 756 F.3d at 785). Madaket, moreover, never explains what it specifically hopes to achieve via discovery. Without any indication of what Plaintiff's jurisdictional discovery would entail or uncover, the Court is unable to grant the request.

**IV.     Conclusion**

As the Court lacks personal jurisdiction over Reyes Holdings LLC, its Motion to Dismiss will be granted. A separate Order consistent with this Memorandum Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 31, 2024