UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MADAKET, LLC,

Plaintiff,

v.

SWEET GRACE DISTILLING
COMPANY, LLC, *et al.*,

Defendants.

Civil Action No. 23-2928 (JEB)

**MEMORANDUM OPINION**

Plaintiff Madaket, LLC operates a series of beach-themed restaurants and bars in the area, all under its registered mark SURFSIDE. Defendant Sweet Grace Distilling Company, LLC later began using that name in a very similar font for a line of canned vodka cocktails. Madaket thus brought this action for trademark violations a year ago, and this Court has already decided multiple motions and permitted the filing of a First Amended Complaint. Now, about six months after the deadline that the Court set for filing amended pleadings, Madaket hopes to shake (or stir?) things up. It seeks to again amend its Complaint by adding: 1) violation of its common-law rights to another mark, SURFSIDER, which it alleges that it has been using in connection with alcoholic beverages sold at its various locations; and 2) other trademark violations related to Sweet Grace's alleged operation of brick-and-mortar bars using the SURFSIDE mark.

Sweet Grace, along with another Defendant, Safeway, Inc., opposes such amendment on the ground that it comes too late. According to Sweet Grace, Madaket has known for a while about the facts and the bases for the claims that it now seeks to add. Given Madaket's lack of diligence, the Court largely agrees. There is one bar, however, that Sweet Grace opened on the

1

Jersey Shore after the amended-pleadings deadline had passed; the Court thus concludes that amendment to include claims based on that establishment is appropriate. It will therefore grant the Motion in part and deny it in part.

## I.  Background

The Court has described the trademark dispute that forms the basis of this case in its prior Opinion denying a motion to enforce a purported settlement. See ECF No. 44 (Settlement Op.) at 2–6. It thus addresses here only those aspects of the existing case that bear upon Plaintiff's Motion to Amend.

Since 2016, Madaket has owned the registered mark SURFSIDE used in connection with its restaurant and bar services. See ECF Nos. 33 (Pl. Opp.) at 2; 33-1 (Declaration of Robert Blair), ¶ 5. There are four SURFSIDE restaurants in the Washington area. See ECF No. 41 (FAC), ¶¶ 10–11. In 2023, an affiliate of Madaket also opened a SURFSIDE location on Nantucket Island. Id. Sweet Grace sells canned vodka cocktails under the same name. Id., ¶ 17. Its "alcoholic iced tea" beverages are sold "in restaurants, bars, and other retail locations" both here and on Nantucket. Id., ¶¶ 17, 19

Madaket alleges that it first learned of Sweet Grace's SURFSIDE beverages around February 2022. Id., ¶ 24. A year later, in February 2023, it sent Sweet Grace a letter "demanding that Sweet Grace cease and desist from all actions infringing on Plaintiff's SURFSIDE trademark." Id., ¶ 28. Sweet Grace responded shortly thereafter, communicating its intent to continue using the SURFSIDE mark in connection with its canned cocktails and its belief "that the marks could coexist without creating any consumer confusion." Settlement Op. at 3 (citing ECF No. 23-18 (Resp. to Cease & Desist)). As Madaket saw things differently, it brought this action against Sweet Grace in October 2023. See ECF No. 1 (Compl.).

The Court's Scheduling Order set a deadline of April 19, 2024, for the amendment of any pleadings. See ECF No. 19. Madaket squeaked in under that deadline, filing a motion for leave to amend its Complaint that same day, which the Court granted. See ECF No. 29; Minute Order of May 6, 2024. The Amended Complaint did not alter the allegations, nor add any claims, against Sweet Grace. Rather, Madaket named as additional Defendants various sellers and distributors of Sweet Grace's SURFSIDE beverages. See ECF No. 29-2, Exh. B (Redline Am. Compl.). This Court later dismissed one of those Defendants, Reyes Holdings, for lack of personal jurisdiction. See ECF No. 84 (Reyes Dismissal Op.).

That brings us to the current Motion. Nearly six months after Madaket filed its First Amended Complaint at the amended-pleadings deadline, it now requests leave to file a Second Amended Complaint. See ECF No. 77 (Pl. Mot.). In doing so, it hopes to shore up a few aspects of its suit. First, it provides additional allegations that it argues demonstrate this Court's personal jurisdiction over now-dismissed Defendant Reyes Holdings. See Pl. Mot. at 2–3; ECF No. 77-1, Exh. A (Proposed SAC), ¶ 22. Second, Madaket seeks to add claims based on its new allegations that Sweet Grace is not only selling canned cocktails with the SURFSIDE mark but also operating bars under the same name and with a similar looking font and color scheme. See Pl. Mot. at 1, 3–5; Proposed SAC, ¶¶ 35–43. More specifically, Madaket identifies a "pop-up" bar in New Jersey called Surfside Beach Bar and a concessions stand in Truist Park, a stadium in Atlanta, called Surfside Sandbar. See Proposed SAC, ¶¶ 37–40. Plaintiff also alleges that Sweet Grace operates a bar called "Stateside Vodka Bar" in Pennsylvania, and that it sells its Surfside canned cocktails there. Id., ¶ 42. Third, Plaintiff asserts that it has common-law trademark rights in a similar mark: SURFSIDER. Id., ¶¶ 17–18. It alleges, for the first time in this action, that it has been using the SURFSIDER mark in connection with alcoholic beverages since March

3

2020.  Id., ¶ 17.  Madaket thus seeks to add a cause of action for infringement of this mark as well.  Id., ¶¶ 72–79.

## II.     Legal Standard

A plaintiff may amend its complaint once as a matter of course within 21 days of serving it or within 21 days of being served a responsive pleading.  See Fed. R. Civ. P. 15(a)(1)(B).  Otherwise, it must seek consent from the defendant or leave from the court.  See Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  In deciding whether to grant leave to file an amended complaint, the court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962).  In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason."  Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Furthermore, under Rule 15, "the non-movant generally carries the burden in persuading the court to deny leave to amend."  Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

The parties dispute the appropriate standard when, as here, a plaintiff moves to amend after the scheduling-order deadline for amendment has passed.  Madaket asserts that Rule 15 still governs, but Sweet Grace rejoins that a plaintiff must satisfy both Rule 15 and Rule 16.  See Pl. Mot. at 5; ECF Nos. 79 (Sweet Grace Opp.) at 3–4; 82 (Pl. Reply) at 4–5.  Defendant is correct.  See Lurie v. Mid-Atl. Permanente Medical Grp., 589 F. Supp. 2d 21, 23 (D.D.C. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the [Rule 16] standard must be satisfied to justify leave to amend the pleadings.") (citation omitted); A Love of Food I, LLC v.

4

Maoz Vegetarian USA, Inc., 292 F.R.D. 142, 143–44 (D.D.C. 2013) (collecting cases applying Rule 16 in this circumstance).

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." The plaintiff bears the burden to show "good cause for [its] failure to amend before the deadline." Valle v. Karagounis, 2020 WL 5505299, at *2 n.1 (D.D.C. Sept. 11, 2020). To do so, it "must show both diligence and a lack of prejudice to the opposing part[y]." In re Papst Licensing GmbH & Co. KG Litig., 762 F. Supp. 2d 56, 59 (D.D.C. 2011). Only if the court finds good cause to modify its schedule under Rule 16 does it consider if leave to amend is also appropriate under Rule 15's "more liberal standard." Premier Comp Sols., LLC v. UPMC, 970 F.3d 316, 319 & n.1 (3d Cir. 2020); see 6A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.) ("[T]he Rule 16(b) standard . . . must be satisfied before determining whether an amendment should be permitted under Rule 15.").

**III.     Analysis**

In separate pleadings, both Sweet Grace and Safeway oppose Madaket's Motion to File a Second Amended Complaint. Sweet Grace argues that Madaket can neither show "good cause" under Rule 16 nor satisfy the more liberal Rule 15 amendment standard. As to the former, Sweet Grace asserts that Plaintiff was aware of the facts underlying its SURFSIDER and bar-services claims before it filed its original Complaint. See Sweet Grace Opp. at 4–10. As a result, it was insufficiently diligent in pursuing these claims. Regarding Rule 15, Sweet Grace urges that Madaket's proposed amendments would be futile because trademark rights have a limited geographic scope and the marks are being used in distinct markets. See id. at 10–14. Safeway largely echoes these arguments in its own Opposition. See ECF No. 81 (Safeway Opp.) at 3–5. The Court separately addresses whether Plaintiff has satisfied the requirements of each rule.

5

Before doing so, it dispenses with one preliminary matter. Defendant Reyes Holdings also opposes Madaket's Motion to file a Second Amended Complaint. See ECF No. 80 (Reyes Opp.). It notes that the proposed supplemental jurisdictional allegations were previously provided in Madaket's opposition to Reyes Holdings's motion to dismiss. Id. at 3–4. Indeed, in the interim, this Court dismissed Reyes Holdings for lack of personal jurisdiction. In doing so, it already considered the supplemental facts that Madaket seeks to add here. See Reyes Dismissal Op. at 4. It would thus be futile for Plaintiff to amend its Complaint to include them. Madaket's Motion to Amend will thus be denied with regard to its supplemental allegations concerning Reyes Holdings.

    A. Rule 16

Diligence is at the heart of Rule 16's good-cause analysis. To evaluate whether a plaintiff acted diligently, the court "focus[es] on the reasons the plaintiff has given for his delay instead of the substance of the proposed amendment." Lurie, 589 F. Supp. 2d at 23. If a plaintiff could have brought the claims that he seeks to add at the outset of the action, or before the amendment deadline, then "the conclusion that she has not acted diligently" is "inescapable." Phillips v. District of Columbia, 2023 WL 5607449, at *3 (D.D.C. Aug. 30, 2023). Madaket insists that it has "valid reasons for not including the facts and claims it seeks to add" in either prior version of the Complaint. See Pl. Reply at 5. But only one holds water.

    1. *Bar-Services Claims*

Plaintiff makes new allegations about three physical bars that Sweet Grace allegedly operates using the SURFSIDE mark, but two of those establishments' sales are not new. The "Stateside Vodka Bar" in Sweet Grace's Philadelphia distillery has been open and selling SURFSIDE canned cocktails since February 2022. See ECF No. 79–1 (Declaration of Clement

Pappas), ¶ 8.  And Surfside Sandbar, the concessions stand at Truist Park in Atlanta, has existed since May 2023.  Id., ¶ 7.  Sweet Grace also submits online evidence of the stand's existence from as early as August 18, 2023.  See ECF No. 79-3, Exh. B (Yelp Screenshot).  In March 2023, moreover, Sweet Grace filed trademark applications for SURFSIDE and SURFSIDE SANDBAR covering "Bar Services; Restaurant Services."  Proposed SAC, ¶ 33.  Madaket itself mentioned those applications in its original Complaint.  See Compl., ¶ 22.

      A reasonably diligent plaintiff would have searched for restaurants and bars using those marks and uncovered the Atlanta and Philadelphia locations at least before April 2024, when the deadline to amend passed, and likely even before October 2023, when the initial Complaint was filed.  Perhaps for this reason, Madaket does not attempt to dispute its lack of diligence with regard to those bars.  See Pl. Reply at 6–7.  Instead, it tries to spirit in claims about them under cover of the third bar.

      More specifically, Plaintiff also alleges that Sweet Grace opened a "pop-up" bar in Long Branch, New Jersey, called "Surfside Beach Bar."  Proposed SAC, ¶¶ 37–38.  It claims in its briefing that the bar did not open until the summer of 2024.  See Pl. Reply at 3 — that is, after the deadline for, and the filing of, the First Amended Complaint.  So there was no way for Madaket to have alleged facts related to the Jersey Shore pop-up prior to the deadline.

      Sweet Grace rejoins that the later opening date of that location is not enough to rescue Madaket's new bar-operation claims.  It maintains that the "diligence" inquiry operates at a higher level of generality.  See Sweet Grace Opp. at 9–10.  "The clock measuring" a plaintiff's delay "starts to run when he learns sufficient information to assert the count."  Hudson v. Am. Fed'n of Gov't Emps., 2019 WL 3533602, at *4 (D.D.C. Aug. 2, 2019) (internal quotation marks omitted).  "[I]t does not reset every time he later learns of some fact that may provide additional

7

support for his argument." Id.  In Sweet Grace's telling, Madaket could have asserted claims against it for its operation of SURFSIDE bars as early as summer 2023 based on the Atlanta and Philadelphia locations; even if the Jersey Shore location strengthened any claims based on bar operation, Madaket still slept on them for too long.

In response, Plaintiff contends that Sweet Grace is trying to have its cake and eat it, too. In addition to arguing a lack of diligence, Sweet Grace asserts that the proposed amendments would be futile because the Philadelphia, Atlanta, and Jersey Shore locations are too far from the geographic market where Madaket uses the SURFSIDE mark in connection with bar services to cause any consumer confusion.  See Sweet Grace Opp. at 10–12.  Seizing on that position, Madaket maintains that "[i]f geography matters, . . . then [Sweet Grace's] brazen opening of the Surfside Beach Bar at the Jersey Shore was a material fact that did not arise until after the deadline to amend pleadings had passed."  Pl. Reply at 7.

This point makes some headway.  Under Sweet Grace's theory, as Madaket points out, Defendant could open a SURFSIDE bar in the heart of D.C., and Madaket would be foreclosed from amending its Complaint to address that conduct simply because it chose not to pursue claims over a concessions stand in Atlanta, over 500 miles away.  Id.  But that argument only works if Sweet Grace is correct that its use of the mark in Atlanta would not confuse D.C. consumers and thus that Madaket's infringement claims based on the Truist Park concessions stand are nonviable — something that Madaket refuses to concede.  Id.

The best way to split our proverbial cake, it seems — at least for purposes of Rule 16 — is to permit amendment of the Complaint to assert claims based on the post-amendment Jersey Shore pop-up bar, but to deny leave to amend as to the other locations.

8

      2. *SURFSIDER Claims*

Turn now to the second category of new allegations and claims against Sweet Grace — namely, those based on the SURFSIDER mark. This is an easier inquiry, as Madaket was plainly not sufficiently diligent in investigating and asserting claims based on this mark. Plaintiff says that it has used SURFSIDER in connection with alcoholic beverages since March 2020. See Proposed SAC, ¶ 17. Its SURFSIDER infringement claim is based on the same underlying conduct by Sweet Grace as its SURFSIDE claims — *i.e.*, Sweet Grace's use of the SURFSIDE mark. Yet, until this Motion to Amend, Madaket has never mentioned its purported common-law SURFSIDER mark.

Plaintiff attempts to justify its delay by arguing that it lacked knowledge of a key element of its SURFSIDER claim until very recently. While it has been using the SURFSIDE mark in connection with restaurants since at least 2013 — well before Sweet Grace came onto the scene — Madaket's use of the SURFSIDER mark in connection with alcoholic beverages did not begin until 2020. See Proposed SAC, ¶¶ 10, 17; Pl. Reply at 7. Had Sweet Grace used SURFSIDE in connection with alcoholic beverages before 2020, therefore, Madaket might not have priority over the SURFSIDER mark. See Pl. Reply at 7–8. In a June 2024 interrogatory, however, Sweet Grace confirmed that its first use of the SURFSIDE mark was in December 2021, after Madaket's first use of the SURFSIDER mark. Id. at 8. It was only in June 2024, in Madaket's telling, that it was "comfortable asserting its common-law rights" in the SURFSIDER mark. Id.

Comfort, however, is not the standard. The question is whether Madaket knew or should have known enough — before the amendment deadline — to allege a sufficient factual basis for the SURFSIDER claims. See Phillips, 2023 WL 5607449, at *3–4. A plaintiff does not need an admission from the defendant to make plausible factual allegations based on the available

9

information. And there was plenty of information available to Madaket about when Sweet Grace began using the SURFSIDE mark. On its publicly available "drinksurfside" Instagram page, there is a post that was shared on December 16, 2021, that includes an image of the canned cocktail accompanied by the text "Introducing Surfside Iced Tea." Pappas Decl., ¶ 4. In February 2022, when Madaket alleges that it first learned of Sweet Grace's use of the mark, that "Introducing Surfside" post was one of only five posts on the "drinksurfside" Instagram page. Id., ¶ 5. Sweet Grace thus contends that a reasonably diligent plaintiff in Madaket's position would have uncovered this post and had a good-faith basis to allege that its use of the SURFSIDER mark predated Sweet Grace's. Beyond that, on April 5, 2024 — two weeks before the amended-pleadings deadline and the filing of the First Amended Complaint — Sweet Grace provided a sworn statement that "it had sold its SURFSIDE alcoholic beverages 'using this font and logo since they were launched in December 2021.'" Pl. Reply at 8.

Madaket responds only that these facts do "not foreclose prior use of the mark by Sweet Grace." Id.. That is, of course, true. Until the June 2024 interrogatory, Plaintiff did not have complete certainty that its use of SURFSIDER predated Sweet Grace's use of SURFSIDE in connection with alcoholic beverages. But Madaket "knew the core basis for the cause of action [it] currently seeks to add before the amendment deadline," and a diligent plaintiff in Madaket's position would have known before it filed its initial —and especially its amended — Complaint. Phillips, 2023 WL 5607449, at *5. Madaket has thus not acted diligently in attempting to add this cause of action now.

### 3. *Prejudice*

Plaintiff emphasizes that none of the Defendants would be prejudiced by allowing the amendments. See Pl. Reply at 9. It is likely right about that. There are more than six months

10

left in discovery, and no party has completed its document production or noticed any depositions. Id.  Sweet Grace makes no effort to argue that it would be prejudiced by the amendment; it instead focuses its "good cause" briefing entirely on Madaket's lack of diligence.  Safeway does assert that it would be prejudiced, but its argument is just a repetition of its merits position that it is not liable for the alleged conduct, which does not go to prejudice.  See, e.g., Safeway Opp. at 4 ("[A]llowing Madaket's proposed amendments will prejudice Safeway by adding to the already significant burden of defending against infringement claims as to which Safeway essentially is an innocent bystander.").

A lack of prejudice, nonetheless, is not enough to establish "good cause" for amending the pleadings past the deadline when a plaintiff failed to exercise diligence.  See, e.g., Valle v. Karagounis, 2020 WL 5505299, at *2 (D.D.C. Sept. 11, 2020) ("Prejudice to the opposing party remains relevant but is not the dominant criterion.  Indifference by the moving party seals off this avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.") (quoting O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004)); United States v. Kellogg Brown & Root Servs., Inc., 285 F.R.D. 133, 136 (D.D.C. 2012) ("If the party was not diligent, the inquiry should end.") (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

In sum, almost all claims that Madaket seeks to add in the Second Amended Complaint are foreclosed by its lack of diligence, save for its claims about the 2024 Jersey Shore pop-up bar.  The Court must next consider whether that amendment is appropriate under Rule 15's more liberal standard.

A. Rule 15

As previewed, Sweet Grace also argues that leave to amend to add the Jersey Shore claim should be denied because such amendment would be futile. See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."). To prevail on an infringement claim, Madaket will have to show a likelihood of consumer confusion. See Klayman v. Jud. Watch, Inc., 6 F.4th 1301, 1319–20 (D.C. Cir. 2021). Sweet Grace assembles a panoply of cases dismissing trademark suits because the marks were used in distinct and distant enough locations that there was no likelihood of consumer confusion as a matter of law. See Sweet Grace Opp. at 10–12. It thus argues that Plaintiff's proposed amendment cannot proceed.

Madaket alleges in its proposed Second Amended Complaint that Sweet Grace's use of the SURFSIDE mark will harm its "projected future interstate business." Proposed SAC, ¶ 113. It also alleges that it has already expanded beyond Washington, opening a Surfside location on Nantucket. Id., ¶ 11. In its Reply, Madaket further bolsters its assertions about future business developments, noting that it has "stated in a verified interrogatory response that it is exploring current expansion opportunities in at least 10 other markets, including New York City and Philadelphia — both less than 100 miles from Sweet Grace's Surfside Beach Bar in New Jersey." Pl. Reply at 12. Indeed, Sweet Grace concedes that Madaket's claims would be viable if it can show "a likelihood of entry into [Sweet Grace's] trade territory." Sweet Grace Opp. at 12 (citing 5 McCarthy § 26:33).

The parties dispute, under prevailing law, how imminent Madaket's plan to enter new markets must be and how close the mark uses must be for consumer confusion to be possible. See Sweet Grace Opp. at 12–14; Pl. Reply at 11–12.  The burden, however, is on Sweet Grace to show the futility of amendment under Rule 15.  Nwachukwu v. Karl, 222 F.R.D. at 211 ("[T]he non-movant generally carries the burden in persuading the court to deny leave to amend."). Given that burden and Rule 15's instruction that leave to amend be "freely give[n]" when justice requires, the Court will allow amendment with regard to the New Jersey pop-up bar.

One final logistical note: the allegations that Madaket is considering expansion opportunities in ten different markets, including locations close to the Jersey Shore, are not in the proposed Second Amended Complaint.  Rather than denying the Motion for Leave to Amend on this basis, and teeing up another motion with its attendant briefing, the Court will allow Madaket to file a Second Amended Complaint with such allegations, but without the claims that this Opinion denies.

### IV.  Conclusion

For the foregoing reasons, this Court will deny in part and grant in part Plaintiff's Motion to Amend.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: December 4, 2024